IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                        Case Nos.:   1:06cr35/MP/GRJ
                                                        1:11cv100/MP/GRJ

BETTY JO RAINS

---

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's second amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and supporting memorandum of law. (Doc. 490.)  The Government has filed a response (Doc. 492) and Defendant filed a reply. (Doc. 507.)   After a careful review of the record and the arguments presented, the Court concludes that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND

Defendant Betty Jo Rains, Edward Hilgendorf (Defendant's brother), Bruce David Adams (Defendant's then significant other), and Juan Baez were charged in a two count superseding indictment with conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii) ("Count One"), and knowing possession of multiple firearms in furtherance of a drug trafficking crime ("Count Two"). (Doc. 122.)[1]  The indictment included a forfeiture provision, requiring all defendants to forfeit to the United States all interest in

---

[1] Co-defendants Edward Hilgendorf and Bruce David Adams were charged with Rains in Count One, and only Adams and Rains were charged in Count Two.

property derived as a result of their criminal conduct, or any property used or intended to be used to commit or facilitate the commission of the offense conduct, as well as a firearm forfeiture provision.

Defendant Rains entered a plea of guilty pursuant to a written plea agreement and statement of facts two days after the grand jury returned the superseding indictment.[2]  The statement of facts summarized her role in the conspiracy, her possession of multiple weapons and the fact that she and co-defendant Adams, with whom she was in a relationship, confessed their involvement in cocaine trafficking to law enforcement. (Docs. 127, 128.)  The statement of facts specifically provided that Defendant knowingly and willfully conspired with Juan Baez, "Robert" Hilgendorf (Defendant's brother), Bruce Adams and others to distribute more than five kilograms of cocaine.  The Alachua County Sheriff's Office ("ACSO") had conducted numerous controlled buys from Defendant in 2006, and on August 29, 2006, officers from the ACSO executed a search warrant at the residence where Defendant resided with Adams, seizing numerous firearms and a small quantity of cocaine.  The loaded firearms were reportedly in the open in Defendant's bedroom, including adjacent to the bed, and were "collocated with cocaine and drug proceeds."  After Defendant and Adams were interviewed and identified Juan Baez as one of their suppliers, Defendant made a recorded call to Baez, who agreed to deliver cocaine to Gainesville, Florida. On September 9, 2006, Baez drove to Gainesville, Florida, where the ACSO arrested

---

[2] The grand jury returned the original indictment on September 26, 2006. (Doc. 13.) Defendant was arrested and had her first appearance on October 2, 2006, following which she was released on a $25,000.00 unsecured bond. (Doc. 32.)

him for possession of 600 grams of cocaine, which he was delivering to Defendant. Baez also cooperated with the investigation, and told law enforcement that he had been supplying Defendant and Hilgendorf approximately 4 to 6 ounces of cocaine every two weeks since the 1990's.  Telephone records corroborated the business relationship between these conspirators, as there were approximately 200 calls between Baez, Hilgendorf, and Defendant between January of 2006 and May of 2006, most of which were made in furtherance of the cocaine conspiracy.  Defendant signed the statement of facts on April 5, 2007.  (Doc.  128.)  She was not detained after entering her plea.

On April 18, 2007, less than two weeks after Defendant entered her guilty plea, the pre-trial services officer sought a warrant for Defendant's arrest based on her repeated telephone conversations with co-defendant Adams, with whom Defendant was prohibited from contacting pursuant to the Order of Release. (Doc. 145.)  The following day, the Government moved to revoke Defendant's plea agreement. (Doc. 147.)  On April 20, 2007, the court revoked Defendant's bond and ordered her detained. (Docs. 154, 434.)  On June 1, 2007, the court revoked Defendant's plea agreement after Defendant admitted she had violated the terms of the agreement. (Docs. 178, 435.)  At a brief hearing, the court reminded Defendant, and Defendant stated that she understood, that she would not be able to withdraw her guilty plea, and that under the circumstances she probably would not receive the benefit of a substantial assistance motion. (Doc. 435 at 2–3.)  Counsel advised the court that after lengthy counseling with his client, he did not believe that there was any confusion on Defendant's part, and that she understood what she was giving up. (*id*. at 3.)

The Presentence Investigation Report ("PSR") was disclosed to the defense on July 16, 2007.[3]  Defendant was held accountable for 15 kilograms of cocaine, based on the testimony of Juan Baez at co-defendant Adams' trial (PSR ¶¶ 26, 27).  This corresponded to a base offense level of 34 (PSR ¶ 34).  Defendant did not receive a guidelines adjustment for possession of a dangerous weapon due to her guilty plea to Count Two (PSR ¶ 35).  Defendant did not receive a downward adjustment for acceptance of responsibility and instead received a two level upward adjustment for obstruction of justice, which resulted in a total offense level of 36. (PSR ¶¶ 32, 38, 41, 42.)  Defendant had no criminal history points and, thus, had a criminal history category of I. (PSR ¶ 46.)  The applicable guidelines range for Count One was 188 to 235 months imprisonment, and 60 months for Count Two in accordance with the statute. (PSR ¶¶ 75, 76, 77.)

The PSR reflected that Defendant received support group counseling at Peaceful Paths Domestic Abuse Network between December 20, 2006 and April 11, 2007. (PSR ¶ 58.)  The PSR also reflects that Defendant signed quit claim deeds to her mother on four parcels of real estate, which were filed in Alachua County after Defendant's indictment.  The Government filed a Lis Pendens on three of the parcels. (PSR ¶ 70.)   The real and personal property subject to forfeiture, included property located at 120 NW 123rd Street in Newberry, Florida. (PSR ¶ 94.)

From August of 2007 through April of 2009, Defendant filed more than a dozen motions to continue sentencing.  Most were related to Defendant's cooperation with the

---

[3] The actual PSR is not part of the electronic record.

Government or counsel's scheduling conflicts, but one motion was precipitated upon counsel's desire to have Defendant subjected to a psychological evaluation.  The resulting evaluation was filed under seal in November of 2008 and remains part of the record. (Doc. 351.)

In May of 2009, Defendant's third retained attorney, Robert Harper,[4] filed objections to the PSR; a motion for an in camera inquiry about a potential conflict between Defendant and her first lawyer and incorporated request to withdraw the plea; and a motion to compel the Government to file a 5K1 motion.  The court held a hearing on Defendant's motions on May 26, 2009. With respect to the 5K1 motion, the defense maintained that the Government had arbitrarily and capriciously withdrawn support for 5K1 relief by seeking revocation of the plea agreement for an unidentified "unconstitutional reason," and that the Government's position was in bad faith. (Doc. 396.)  The court denied Defendant's motion to compel, finding that upon revocation of the plea agreement, there was no longer any contract between Defendant and the Government. (Doc. 430 at 9.)  The Court then heard testimony on Defendant's motion to withdraw her guilty plea on the basis of counsel's alleged "conflict of interest."

Defendant testified that she had hired her first attorney, Huntley Johnson, because she had known him for twenty to twenty-five years and she had worked for him

---

[4] Defendant retained Huntley Johnson in October of 2006 and he continued to represent her until September of 2007.  Thomas Edwards represented Defendant from September 24, 2007 through April 22, 2009.  Attorney Harper filed a notice of appearance on April 22, 2009 and continued to represent Defendant through her appeal.  Attorney Joel Hirschhorn was consulted to assist Defendant with her § 2255 motion, but has not filed a notice of appearance in this case. (*See* Doc. 507 at 32.)

at one point.  She explained the nature of the work she did for Johnson as cleaning his apartment, picking up his cleaning, and going to get him cocaine or marijuana. Defendant testified that Johnson had asked her to pick up drugs more than a dozen times.  Some of the drugs were obtained from Juan Baez, a co-defendant in this case, who was alleged to have supplied Defendant and Adams with cocaine.  Defendant testified that a friend, Suzanne Hoffman, sometimes was with her when she made the drug purchases or transfers. Defendant also identified her ex-husband, Jerry Rains, and her brother, co-defendant Hilgendorf, as having accompanied her on occasion. Defendant stated that she observed Johnson use the illegal substances probably more than a dozen times.  (Doc. 430 at 10–13.)

On cross-examination, Defendant explained that she had worked for Johnson in the mid 1980's and that she provided him with drugs from various sources on and off until about 1991.  Defendant testified that during her interviews with law enforcement she did not tell them that she had provided drugs to Johnson because this was in the past, because he was her attorney, and because she did not think it was important. Defendant testified that Johnson had discussed the plea agreement with her only briefly, fifteen minutes before she had to sign it.  She said that counsel also told her that if she said anything about not understanding it that she would not be able to enter the plea, so Defendant "said yes to everything" the judge explained, even if she did not understand, for fear of not being able to enter the plea otherwise. (Doc. 430 at 14–22.)

Suzanne Hoffman, Defendant's long-time friend, testified that she knew Huntley Johnson and that she had been in his company about four times when "drugs were

used." Ms. Hoffman admitted that she had memory issues due to her chemotherapy and was uncertain of the exact time frame but stated that this happened around the time that Johnson's father was dying. She also testified that she had observed Johnson exchange money for a plastic bag containing white powder three times, with the last time being when Defendant left Gainesville. No one used cocaine in her presence on those occasions. (Doc. 430 at 23–27.)

On cross-examination, Ms. Hoffman testified that she had used marijuana a couple of times during her chemotherapy several years ago, but that she had never used cocaine. In fact, she stated that she had tried to talk Defendant out of dealing cocaine on many occasions. She again admitted having memory issues as a result of her chemotherapy. Hoffman testified that she was taking Oxycodone, as well as Amitriptyline and Lopressor for migraines, although she denied that Oxycodone affected her mental acuity. (Doc. 430 at 27–31.)

Deputy Sheriff Travis Devinny of the Alachua County Sheriff's Office testified that he was assigned full-time as a task force officer with the DEA and that he was the lead federal agent responsible for the investigation leading to Defendant's indictment. Devinny testified that he had interviewed Defendant between seven and eleven times, when she was represented by attorney Johnson and later Edwards. Although Devinny made it clear to her that he needed information regarding all the persons that Defendant provided drugs to, she never identified Johnson as someone who had obtained drugs from her. Agent Devinny testified that after co-defendant Adams' conviction, he obtained and listened to the 327 telephone conversations between co-

defendant Adams and Defendant.  He stated that prior to that time he did not know either that the conversations existed or that Defendant had the cell phone that Adams called to contact her.  Devinny also testified that during an early interview with the Defendant he asked her about Ms. Hoffman because Hoffman's name came up on Defendant's cell phone records.  Defendant denied having sold, bartered or traded cocaine and marijuana to Hoffman, but she told Devinny that she had given both drugs to Hoffman as a friend.  (Doc. 430 at 32–36.)

On cross-examination, Devinny admitted that the existence of the recordings of the telephone conversations between Adams and Defendant had no impact on Adams' case, as he was convicted without them.  He stated that he had talked with Johnson, who confirmed the employer/employee relationship that counsel had with Defendant.  Devinny testified that he had no reason at the time to ask Johnson whether Johnson and Defendant had shared any drugs or controlled substances.  He also stated that he did not inquire about the quantity or weight of the drugs Defendant told him she provided to Hoffman.  He affirmed that he had read the entire case file, and admitted that the latter information, regarding Defendant's provision of drugs to Hoffman, was not documented in the DEA report. (Doc. 430 at 36–39.)

After hearing this evidence, the Court concluded that, even if the Court accepted Defendant's testimony that 18–20 years ago she supplied Johnson with some drugs, Defendant had presented nothing to show that attorney Johnson was legally ineffective.  The Court, therefore, denied Defendant's motion to withdraw her guilty plea on this basis. (Doc. 430 at 47–48.)

The hearing proceeded, and Defendant initially told the Court that she had neither read the entire PSR nor reviewed it with counsel, although counsel stated otherwise. (Doc. 430 at 48–51.)  In addition to the written objection about the Government's decision not to file a 5K1 motion counsel argued that there was no factual basis for Defendant's guilty plea to Count Two because the guns in question had been left at her house within 24 hours of her arrest by other co-conspirators.  The Court overruled both objections and sentenced Defendant to a mid-guidelines range term of 211 months imprisonment on Count One and a consecutive term of 60 months imprisonment on Count Two. (*Id*. at 8-9, 61; Docs 401, 405.)

Defendant appealed contending that she was entitled to a reduction based on her substantial assistance under § 5K1.1 and, alternatively, that she was entitled to withdraw her guilty plea.  The Eleventh Circuit found with respect to Defendant's first claim that although Defendant had provided assistance to the government she had failed to allege an unconstitutional motive for the Government's refusal to file a substantial assistance motion on her behalf.  The Eleventh Circuit also concluded that Defendant had not shown that the district court's refusal to allow Defendant to withdraw her plea was arbitrary or unreasonable in light of the fact that the record reflected that Defendant had not met her burden of showing a fair and just reason to withdraw her plea.  (Doc. 459.)

Defendant timely filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 473), which she later amended. (Doc. 478.)  She then filed a motion for leave to file a second amended § 2255 motion.  Leave was granted, and it is

the second amended motion to vacate (the "motion to vacate") that is currently before the court.

In the present motion to vacate, Defendant raises twenty grounds for relief in which she claims that her retained trial or appellate attorneys were constitutionally ineffective in their representation of her. The Government opposes the motion in its entirety.

## LEGAL ANALYSIS

### General Legal Standards

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  Nyhuis, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998);  McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."  Lynn, 365 F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055).   Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."  Lynn, 365 F.3d at 1234; Bousley, 523

U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."  Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503 (2003); see also United States v. Franklin, 694 F.3d, 1, 8 (11th Cir. 2012).  In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  Strickland's two part test also applies to guilty pleas.  Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012) (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985)).  A defendant will be required to show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial.  Id at 1384–85 (quoting Hill, 474 U.S. at 59).  A defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice.  Pericles v. United States, Case No. 12-14505, 2014 WL 2198514 (11th Cir. May 28, 2014) (quoting Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991)).  In applying Strickland, the court may dispose of an ineffective assistance claim

if a defendant fails to carry his burden on either of the two prongs.  Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); *see also* Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.  Strickland, 466 U.S. at 689.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315.  When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."  Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  Strickland, 466 U.S. at 694.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."  Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010).  A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).  Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.  See Glover v. United States, 531 U.S. 198, 203–04 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."  Id. at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.  Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test.  See Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551,

1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing

Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and

presumptions set forth above, "the cases in which habeas petitioners can properly

prevail . . . are few and far between." Chandler, 218 F.3d at 1313.  This is because the

test is not what the best lawyers would have done or even what most good lawyers

would have done, but rather whether some reasonable lawyer could have acted in the

circumstances as defense counsel acted.  Dingle, 480 F.3d at 1099; Williamson v.

Moore, 221 F.3d 1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to

have been unwise in retrospect, the decision will be held to have been ineffective

assistance only if it was 'so patently unreasonable that no competent attorney would

have chosen it.'"  Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d

1443, 1445 (11th Cir. 1983)).  The Sixth Circuit has framed the question as not whether

counsel was inadequate, but rather whether counsel's performance was so manifestly

ineffective that "defeat was snatched from the hands of probable victory."  United States

v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing

"unless the motion and files and records conclusively show that the prisoner is entitled

to no relief," a defendant must support his allegations with at least a proffer of some

credible supporting evidence.  See Chandler v. McDonough, 471 F.3d 1360, 1363 (11th

Cir. 2006) (citing Drew v. Dep't of Corr., 297 F.3d 1278, 1293 (11th Cir. 2002) (referring

to "our clear precedent establishing that such allegations are not enough to warrant an

evidentiary hearing in the absence of any specific factual proffer or evidentiary

support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an

evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner

must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United

States, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous

claims, conclusory allegations unsupported by specifics, or contentions that are wholly

unsupported by the record. Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir.

2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th

Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than

conclusory allegations do not warrant a hearing. Lynn, 365 F.3d at 1239.

### Ground One

Defendant first contends that counsel was constitutionally ineffective because he

failed to explain the terms and conditions of the plea agreement. As a result, she

asserts that her plea was not entered knowingly, intelligently, and voluntarily.

The validity of Defendant's plea and whether she should have been allowed to

withdraw the plea was one of the issues Defendant raised on appeal. The Eleventh

Circuit found that the Court's conclusion that Defendant was not entitled to withdraw her

plea was neither arbitrary nor unreasonable, and that the Court's factual findings were

not erroneous. Although the Eleventh Circuit did not specifically identify the factual

findings it ratified, it did mention that (1) the trial court found that Defendant had been

advised that she would not be permitted to withdraw her plea; and (2) the trial court

found that Defendant had not shown ineffective assistance of counsel with respect to

her plea. (Doc. 459 at 9, 11.)  If the Eleventh Circuit had found that Defendant's plea

was not knowing, voluntary and intelligent due to counsel's failure to explain the plea to

her, as Defendant now claims, the Eleventh Circuit could not have reached the

conclusion it did.  Consequently, Defendant may not relitigate this claim in her § 2255

motion.  *See* Rozier, 701 F.3d at 684; Nyhuis, 211 F.3d at 1343; Sanders, 373 U.S. at

16.

Defendant also claims that she was erroneously induced to believe that she

would receive a lesser sentence than she would have otherwise received by pleading

guilty. Defendant correctly points out that co-defendant Adams received the same

sentence that she received despite the fact that he proceeded to trial.

As a general proposition Defendants who plead guilty typically do receive shorter

sentences than they would have received if they are convicted after a trial.  This is

because defendants who plead guilty typically accept responsibility for their actions and

receive a corresponding sentence reduction; very few engage in obstructive conduct

after a guilty plea.  Furthermore, many defendants cooperate with the Government by

providing truthful information about other offenses or truthful testimony in pending

cases, which can result in a significant sentence reduction if the Government files and

the court grants a motion pursuant to 5K1.1 or Rule 35.  In this case, Defendant did not

receive an acceptance of responsibility adjustment, apparently due to her failure to

accept responsibility and submit a statement through counsel. (*See* PSR ¶¶ 32, 41.)

Defendant's sentence was further affected by the fact that she received an obstruction

adjustment due to her failure to disclose to law enforcement that she had an additional

cell phone, which co-defendant Adams used to call her 327 times during his pre-trial detention, and during which conversations the two conspirators discussed her testimony at his upcoming trial. Finally, the Government took the position that Defendant's testimony at Adams' trial was untruthful and that she minimized Adams' involvement in the conspiracy. This prevented Defendant from receiving a 5K1 motion, which could have reduced her sentence by nearly one half.

Thus, while at first blush it may seem "unfair" to Defendant that she received the same sentence as a similarly culpable co-defendant who went to trial, any potential benefit of Defendant's guilty plea was lost due to her own actions. Therefore, the fact that a defendant who proceeded to trial received the same sentence as Defendant does not demonstrate that counsel gave her bad advice. Accordingly, Defendant has not established that counsel was constitutionally ineffective or that she was prejudiced by his actions in this regard.

### Ground Two

As Defendant's second ground for relief, she asserts that her first retained attorney, Huntley Johnson, had a conflict of interest that precluded him from taking her case to trial or from pursuing other defense strategies because aspects of his drug use may have come into question. As discussed above, the defense raised the issue of counsel's conflict of interest at sentencing and presented testimony on this issue. The court determined that even accepting Defendant's allegations that she had supplied counsel with drugs nearly twenty years ago there was no evidence that this in any way affected counsel's representation of her in this case. (Doc. 430 at 47–48.) Defendant

adds no new argument or evidence that would direct a different conclusion, and she may not relitigate this issue again in this proceeding. *See* Rozier, 701 F.3d at 684; Nyhuis, 211 F.3d at 1343; Sanders, 373 U.S. at 16.

Furthermore, Defendant cannot deny that counsel's alleged drug use was something of which she was well aware when she made the decision to hire him.  Her attempt to rely on these facts now to establish a "conflict of interest" is disingenuous, particularly given the fact that this issue was never brought to the court's attention by her second attorney, and Defendant herself thought that the fact that she used to supply drugs to former counsel was "not important."  Accordingly, Defendant has not shown that she is entitled to relief.

### Ground Three

Defendant claims that attorney Johnson was constitutionally deficient at her plea revocation hearing when he failed to argue that Defendant had cooperated and discharged the duties in her plea and cooperation agreement, and that she was subjected to excessive coercion and duress from her co-defendant/boyfriend.

Defendant's plea agreement required her to provide "complete and truthful debriefings and testimony at grand jury, trial, and as otherwise requested, involving any matter under investigation, and it contains a detailed clause concerning revocation of the agreement. (Doc. 127 at 4.)  The plea agreement provides that the United States Attorney may revoke the agreement upon showing by a preponderance of the evidence that Defendant's statement or testimony were untruthful or incomplete.  Defendant's PSR reflects the Government's position that Defendant's testimony at co-defendant

Adams' trial, which testimony she had discussed with Adams on multiple occasions

prior to trial and unbeknownst to law enforcement, was untruthful and that she

minimized Adams'  involvement in the conspiracy. (PSR ¶¶ 30, 31.)[5]

In addition to Defendant's untruthful testimony at co-defendant Adams' trial,

Defendant also later admitted, under oath, that she failed to identify counsel as

someone to whom she had provided drugs in the past, despite having been interviewed

by Deputy Sheriff Devinny at least four times, and despite her understanding that she

was to be truthful and complete with all her statements. (*See* Doc. 430 at 16–18,

33–34.) Thus, Defendant's assertion that she had faithfully performed the duties

specified in her plea agreement is not well-founded, and counsel was not

constitutionally ineffective for his failure to present this argument to the court.

Defendant also asserts that counsel should have raised a defense of duress and

coercion when the Government sought to revoke her plea agreement.  In support of this

argument Defendant asserts that Adams had bragged to her about gang-related

murders that he had committed or had knowledge of, and he warned her that "harm

would come to her two sons if she revealed anything about him or the Hell's Lovers

motorcycle gang other than what he told her to say." (Doc. 490 at 22.)  Defendant

claims that she accepted Adams' calls on the cell phone provided to her by Adams'

estranged wife for fear of reprisal and that even though she testified at Adams' trial she

---

[5] Defendant notes in her memorandum that the Government waited until after she had testified at Adams' trial before they filed to revoke her plea agreement.  It was only after Defendant's untruthful testimony at that trial, and the Government's investigation of Adams' jail phone records that they had a basis to do so.

remains under significant duress from Adams and his gang members through their phone calls to her mother.  Defendant's claim appears to be that counsel should have argued that she breached her plea agreement as a result of duress.  As noted by the Government, even if it is true that Defendant acted in contravention to the plea agreement as a result of perceived pressure from Adams, this does not alter the fact that Defendant breached her plea agreement.  The dynamics of the relationship between Adams and Defendant was likely a more appropriate subject for sentencing, as will be discussed further below.  Counsel's decision not to engage in a losing battle to contest the revocation of the plea agreement, rather than attempting to maintain a cooperative stance cannot be said to be constitutionally ineffective.

### Ground Four

Defendant asserts that following the revocation of the written plea and cooperation agreement, counsel was constitutionally ineffective for failing to challenge the terms of an oral agreement allegedly tendered to her by the Assistant United States Attorney. Defendant claims that before the revocation hearing, the Government promised Defendant (through her then-counsel Huntley Johnson) that it would move for a downward departure in her behalf if she would agree not to challenge the contents of her letters to and phone conversations with co-defendant Adams at her revocation hearing.  Defendant maintains that it is irrefutable that she did not challenge the AUSA's position at the hearing.  This is not dispositive, as Defendant has suggested no viable basis for doing so.  Even if the Government's proof was well-established and readily available, a decision not to contest the Government's position could be

perceived in a positive light as Defendant choosing to take responsibility for her conduct, rather than presenting a frivolous denial.  Thus, regardless of whether the AUSA promised anything in return for her acquiescence to the revocation, her decision not to challenge the issue, in light of the strength of the evidence against her, was a reasonable strategic decision in light of her continued hope of receiving the benefit of a substantial assistance motion.

Neither the behavior of Defendant or her counsel would suggest the existence of the alleged "promise."  The record reflects that when the court advised Defendant at the hearing that she probably would not get a substantial assistance motion, she responded that she understood, and she did not dispute the court's statement. (Doc. 435 at 2–3.)  Finally, when the court asked the parties at the hearing if there was anything else they would like to put on the record, neither Defendant nor her attorney mentioned the alleged agreement to file a substantial assistance motion, despite the fact that it would have contradicted the court's statement.

Defendant's position is further undermined by the affidavit of Defendant's mother, Betty Hilgendorf, in which Ms. Hilgendorf states that after the revocation hearing AUSA Williams told her at the courthouse that Defendant "deserved to get some sentencing relief and he was going to file a motion to get her a reduction." (Doc. 490-9 at 4.)  Hilgendorf's characterization of Williams' comment does not suggest that such a reduction already had been promised or that any sort of "deal" had been made.  Furthermore, the fact that Williams' supervisors apparently later instructed him not to

file the motion is further proof that Williams himself did not have authority to make such

a promise and thus could not have done so.

Finally, Defendant's belief in the existence of this agreement is further called into

question by the fact that even following the revocation of her plea agreement,

Defendant never brought the alleged agreement to the Court's attention, including at

sentencing when the 5K1 agreement was a focal point of the proceedings.  In sum,

Defendant has not shown that counsel was constitutionally ineffective for failing to bring

this matter to the court's attention.

### Ground Five

Defendant asserts that counsel was constitutionally ineffective when he failed to

alert the court that Deputy Devinny had "threatened to prosecute" a third party.  Devinny

allegedly had threatened to "lock up" Defendant's mother, Betty Hilgendorf, unless

Defendant could persuade Mrs. Hilgendorf to forfeit property identified as "the Ranch"[6]

to the Government, presumably due to drug dealing activities taking place there.   She

claims that this was a due process violation.  Defendant asserts that attorneys Johnson

and Edwards and even Judge Paul implied that if the Ranch property was forfeited to

the Government, the court would be more lenient on Defendant at sentencing. (Doc.

490 at 28.)  Defendant does not suggest, however, how Devinny's alleged threat to

prosecute her mother changed the outcome of the proceedings in any way, particularly

---

[6] Rains was living at the Ranch property with Adams at the time of her arrest.  She states that she had lived there for free for some time in exchange for helping her mother with maintenance on that property and adjacent rental apartments and land that Hilfenger owned. (Doc. 490-6 at 3.)

with regard to changing her decision about entering a plea of guilty.  *Cf*. Newland v.

Hall, 527 F.3d 1162, (11th Cir. 2008) (threat to charge a person for whom the police

have probable cause to arrest does not render the accused's guilty plea invalid);

Bradford v. Mitcham, Case No. 1:12-cv-03726-SLB-HGD, 2014 WL 838790 (N.D. Ala.

Mar. 4, 2014) (defendant unsuccessfully moved to withdraw guilty plea based on

allegations that it was entered as a result of threats to prosecute family members).

Thus, Defendant has not shown that she was prejudiced by counsel's failure to bring

this issue to the attention of the court.

Defendant also faults counsel for failing to request Judge Paul to recuse himself.

She claims that Judge Paul was biased, based on his having "strongly recommended"

that Ms. Hilgendorf make preparations to forfeit the Ranch property.  She maintains that

counsel were in agreement that if Ms. Hilgendorf did not file quit claim deeds on the

Ranch property, Judge Paul "would be incensed and antagonistic toward Ms. Rains."

(Doc. 490 at 28.)  Defendant has pointed to nothing in the record to show a basis for

her attorneys' purported belief.

In relevant part, 28 U.S.C. § 455(a) provides that "[a]ny ... judge ... of the United

States shall disqualify himself in any proceeding in which his impartiality might

reasonably be questioned."   In keeping with the aim of  promoting confidence in the

judiciary by avoiding even the appearance of impropriety whenever possible, recusal

under § 455(a) turns on whether an objective, disinterested, lay observer fully informed

of the facts underlying the grounds on which recusal was sought would entertain a

significant doubt about the judge's impartiality.  In re Moody, Case No.  13-12657, 2014

WL 948510 (11th Cir. Mar. 12, 2014) (citations and internal quotation marks omitted);

United States v. Patti, 337 F.3d 1317, 1321 (11th Cir. 2003).  Judge Paul's

recommendation that Mrs. Hilgendorf prepare herself to forfeit the property, and the

purported beliefs of Defendant's attorneys about what the Court's reaction would be if

Hilgendorf failed to comply, is woefully insufficient to meet this standard. Consequently,

counsel were not constitutionally ineffective for their failure to raise this claim.

### Ground Six

Defendant asserts that counsel's performance was constitutionally deficient in

that he failed to invoke the doctrine of *quantum meruit* due to the Government's failure

to file a 5K1 motion despite an "implied agreement" to do so.  Defendant relies heavily

on an unpublished Eleventh Circuit decision, United States v. Aiken, No. 08-15216,

2009 U.S. App. LEXIS 8709 (11th Cir. 2009) (unpublished).[7]  In Aiken, the defendant

appealed the district court's denial of his motion to compel the Government to move for

a sentence reduction based on Defendant's provision of substantial assistance.  The

court noted that defendant's quantum meruit argument contradicted his assertion that

there was an express agreement to file a 5K1 motion, and the same can be said in this

case.   In any event, as also noted in Aiken, such an agreement would have obligated

the Government to act in good faith in deciding whether to file a 5K1 motion.  There is

nothing in the record in this case to suggest that the Government had an

unconstitutional motive for not filing a 5K1 motion in Defendant's case.  Finally, the

Aiken case was decided just one month before Defendant's sentencing, and as the

---

[7] Aiken is not available on West law.

court noted in Aiken, there was and is no binding case law supporting this theory of relief.  Accordingly, Defendant has not shown that counsel's decision not to raise this argument was "so patently unreasonable that no competent attorney would have chosen it."  Dingle, 480 F.3d at 1099 (quoting Adams, 709 F.2d at 1445) and, thus, she is not entitled to relief.

### Ground Seven

Defendant claims that counsel was constitutionally ineffective because he failed to "explain" why firearms were found at the Ranch property where Defendant was living. Defendant argues that counsel failed to raise potential defenses to the charge in Count Two or raise the issue regarding the circumstances surrounding the firearms in mitigation at sentencing.  For example, Defendant asserts that only two of the multiple firearms found at the Ranch property belonged to her and each of those two weapons was unloaded.  She further asserts that neither of these weapons had any nexus to drug trafficking activity and as support for her argument cites to cases holding that the mere presence of the firearm within a defendant's domain and control during a drug trafficking offense is not sufficient to sustain a § 924(c) conviction, and similarly, that possession or storage of a firearm near drugs is insufficient to satisfy the "use" element of § 924(c).  United States v. Vasquez-Padilla, 330 F. App'x 883 (11th Cir. 2009); United States v. Mount, 161 F.3d 675, 678 (11th Cir. 1998).  With respect to the other weapons, Defendant insists that she never used or carried any weapons in furtherance of drug activity or to protect drug proceeds.  Defendant further insists that she never asked for the additional weapons to be at her house, but maintains that Adams brought

them there the day prior to the execution of the search warrant due to an issue with his

gun safe and a trailer he had been using for storage.  Defendant also asserts that

Devinny bragged that law enforcement conducted the "raid" on the Ranch property after

observing the off-load of guns to the property.

"A guilty plea, since it admits all the elements of a formal criminal charge, waives

all non-jurisdictional defects in the proceedings against a defendant."  United States v.

Brown, 752 F.3d 1344, 1347 (11th Cir. 2014) (quoting United States v. Fairchild, 803

F.2d 1121, 1124 (11th Cir.1986) (quoting United States v. Jackson, 659 F.2d 73, 74

(5th Cir.1981)); see also United States v. Patti, 337 F.3d 1317, 1320 (11th Cir.2003).

Defendant was expressly informed at her change of plea that by pleading guilty, she

was admitting the truth of the charges against her, waiving any defense whatsoever that

she might have, and giving up the right to appeal the issue of her guilt or innocence.

(Doc. 432 at 7–8.)  The Court expressly explained to Defendant the elements of the

offense and the Government proffered the facts it was prepared to prove if Defendant's

case went to trial. (Id. at 9, 11–12.)   Defendant admitted these facts and persisted in

her plea.

At sentencing – and contrary to Defendant's argument and despite her previous

admission to facts sufficient to sustain a guilty plea -- counsel did argue that the guns

were not used in furtherance of the conspiracy, and that they had been in her home for

less than twenty-four hours before her arrest. (Doc. 430 at 51–52.)  The court overruled

the objection. (Id. at 61.)

Accordingly, Defendant has not shown that counsel's performance was constitutionally deficient or that she is entitled to relief on this claim.

### *Ground Eight*

Defendant claims that counsel was constitutionally ineffective because he failed to object to outrageous Government conduct.  The outrageous conduct in question was AUSA Williams' offer to file a 5K1.1 or a Rule 35 motion if Defendant agreed not to challenge anything at her plea revocation hearing.   If in fact such an offer was made (which the court does not find Defendant has shown) she has failed to demonstrate how this would constitute "outrageous conduct" on the part of the Government.  She also has not established how an objection by counsel would have altered the outcome of the proceedings in any way.  Absent o a showing of prejudice, she is not entitled to relief on this claim.

### *Ground Nine*

Defendant contends that attorney Robert Harper, who represented her at sentencing, was constitutionally ineffective because he failed to file a motion for downward departure or present mitigating evidence at sentencing.  She states that counsel "failed to conduct any investigation or present so much as a shred of mitigating evidence at all during the pendency of [her] sentencing hearing." (Doc. 490 at 35.) Defendant significantly overstates Harper's failings, and she has failed to show prejudice.

At sentencing, counsel alluded to the fact that Defendant was "amenable to" manipulation, especially with co-defendant Adams. (Doc. 430 at 42.)  He also

attempted to explain the reason for the presence of the guns at the Ranch property and distance Defendant from the firearms. (*Id*. at 51–52.)  When the court asked counsel if he had any additional matters he wanted to present, counsel responded that he did not. (*Id*. at 48, 54.)  The court advised that it had read all the letters it received in Defendant's behalf, including a letter from Defendant's mother. (*Id*. at 54.)  Counsel called a friend of Defendant's to speak in her behalf, and noted the presence of Defendant's children and other "silent witnesses" who were sitting in support of his client.  Defendant addressed the court and said "I'm just really sorry I've put you guys through everything and for taking your time, and my mother, my father and my children. I'm so sorry for everything that's happened.  I never, ever thought it would be like this." The court asked Defendant what she thought it would be like, to which Defendant responded that she was not really thinking and could not be thinking because her mother was sick and in the hospital because of Defendant's actions.  Defendant noted that her mother had "done everything she could to try to make things different.  And my children too," and apologized again. (*Id*. at 57.)

Counsel followed Defendant's allocution with a few remarks.  He noted that since his involvement in the case he had been "stricken" with the family and wished "only to have had more time with Ms. Rains where *I could have had her evaluated* and put her in a treatment program or some of the benefits that could have been enjoyed while she was on pretrial release..." (Doc. 430 at 58 (emphasis added)).  Counsel noted that Defendant had a loving and close family, but despite this "seems to find these sorry guys who put her in a predicament."  Counsel then stated:

The older I get, the harder it is on me to understand this, especially with two daughters who are 27 and 25 and you just hold your breath and hope.

And unfortunately these bad connections, I think, just like this telephone business with Bruce [Adams] was ill-advised, is an all-time understatement. It's just stupidity.

Anybody doing something like that on your watch, you know, successfully breaking into jail. And that's what happened here.

And I always like to find out why. And I don't really know why. A lot of things that I just don't understand.

I would ask that you give her what leniency that is authorized under the 3553 and the statutes here in question, and provide that she maybe have some treatment while she's going through the process because I don't think it would be lost.

(Doc. 430 at 58–59.) Counsel presented no other evidence or argument, and he neither referred to, nor directed the court's attention to, the psychological evaluation contained within the record, despite the fact that the contents of the report answered some of the questions he purported to have about Defendant's behavior.[8]

---

[8]Dr. Krop stated in relevant part that:

[i]t is clear that Ms. Rains is a woman with an incredibly low self-concept and significant dependency needs. She is a non-assertive woman who can be intimidated easily. She is an individual who is extremely needy and easily manipulated. It certainly appears that these personality traits contributed significantly first to her involvement in the drug trade and secondly to her continued contact with Mr. Adams despite being warned and admonished by the Court. From her description of these contacts with Mr. Adams, it appears that she was both intimidated and made to feel guilty by his actions. Combined with the existing stress in her life, Ms. Rains obviously made poor decisions and used extremely bad judgment to the extent that she engaged in very self-defeating behavior which resulted in her current legal plight.

(Doc. 351 at 3.)

The Government takes the position that counsel's presentation was adequate.  It argues that the court had read the PSR and the "mitigation evidence contained within." The court surmises that the Government refers to the PSR's reference to Defendant's participation in support group counseling at Peaceful Paths Domestic Abuse Network beginning shortly after her initial appearance on her violation of pre-trial release in December of 2006 through April of 2007 when she was detained. (PSR ¶ 58).  This information alone likely would have had virtually no weight with respect to the court's sentencing decision, as it provided no background information concerning the reason for Defendant's participation in this program.

The Government also argues that the court "had access to" the psychological evaluation conducted on Defendant and the report of the results of that evaluation. (Doc. 351.)  This is undoubtedly true.  In light of the contents of that report, and counsel's stated desire to have had Defendant evaluated, it is somewhat perplexing that counsel did not offer any argument in mitigation based on Dr. Krop's report.  There is some record evidence that counsel "did not know about" the examination (*see* doc. 503 at 32, declaration of Betty Hilgendorf), although Defendant's mother made an effort to bring it to counsel's attention. (Doc. 490-9 at 5.)[9]  In any event, counsel's specific remark about having Defendant evaluated was a clear indication that he placed some importance on such an evaluation.  Prudent practice would have been to refer the sentencing court to the Krop report, notwithstanding the fact that it was already in the

---

[9] The Government did not submit an affidavit from any of Defendant's three retained attorneys, and therefore what counsel actually knew can only be surmised from the record.

record.  However, the undersigned finds that counsel's failure to do so does not rise to the level of constitutional ineffectiveness.  Counsel did not ignore his client's psychological issues in his remarks to the court, and, as noted by the Government, the report in question was already part of the record.

Furthermore, even if counsel's failure to present this evidence "in mitigation," is considered to be constitutionally deficient, Defendant has not shown prejudice.  The evidence that she faults counsel for failing to present is essentially aimed at "excusing" her conduct, rather than supporting a legal basis for a different guidelines assessment.  Thus, even if counsel had presented additional evidence or argument in this regard, under the circumstances of this case, Defendant's sentence at the mid-point of the guidelines range would have almost certainly remained unchanged.

Defendant also argues that counsel should have specifically filed a motion pursuant to § 5K2.13 of the Sentencing Guidelines.  This Policy Statement suggests that a downward departure may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity which contributed substantially to the commission of the offense.  A "significantly reduced mental capacity" is defined in the commentary as a "significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or "B) control behavior that the defendant knows is wrong.  The Government claims that a motion pursuant to § 5K2.13 was not available to the defense because the guideline prevents downward departure if "the facts and circumstances of the defendant's offense indicated a need to protect the public because the offense

involved actual violence or a serious threat of violence."   However, a conviction of a

"violent" crime does not categorically exclude a defendant from consideration for an

adjustment pursuant to this section because of the court's ability to look beyond the

offense of conviction to the "facts and circumstances of the offense.  *See* United States

v. Sam, 467 F.3d 857, 861 (5th Cir. 2006) (remanding for re-sentencing of a defendant

convicted of bank robbery who did not use "overt violence" in robbing the bank); *cf.*

United States v. Mansoori, 304 F.3d 635, 675 (7th Cir. 2002) (remanding district court's

finding that violence alleged in the indictment but unnecessary to the  narcotics

conspiracy charge precluded a departure under 5K2.13).  Nonetheless, the

undersigned finds that the conclusions reached in the psychiatric report would not have

supported a request for relief pursuant § 5K2.13 relief.

### *Ground Ten*

Defendant asserts that counsel's performance was constitutionally deficient

because he failed to object to the court's failure to explain her "extraordinary"[10]

sentence pursuant to 18 U.S.C. § 3553(c)(1).   This statute provides that a district court

shall state the reason for its imposition of the particular sentence, but the length and

amount of detail necessary to describe the district court's reasoning depends on the

circumstances of the case.  United States v. Ghertier, 605 F.3d 1256, 1262 (11th Cir.

2010) (citing Rita v. United States, 551 U.S. 338, 356 (2007)); *see also* United States v.

Bonilla, 463 F.3d 1176, 1181 (11th Cir. 2006).

---

[10] Defendant's characterization of her sentence at the mid-point of the applicable
guidelines range, appears somewhat misplaced.

In imposing sentence in this case, the court noted that Defendant's mid-guideline range sentence was "sufficient punishment" as to Count One.  It also stated that it had "fully considered the factors set out in 18 U.S. Code 3553A, that all of the guideline, sentencing commission guidelines and statements."  Finally, it directed that the judgment reflect that Defendant be permitted to attend mental health and substance abuse classes while incarcerated. (Doc. 430 at 62–63, 66.)  Even if counsel could have raised a viable objection to the manner in which the district court imposed sentence, Defendant has not shown how she was prejudiced by his failure to do so, and as such she is not entitled to relief under Strickland on this ground.

### *Ground Eleven*

Defendant next asserts that counsel was constitutionally ineffective on appeal when he cited an incorrect standard of review and based his argument on inapplicable precedent.  Specifically, she states that counsel argued that the Eleventh Circuit's review was plenary, rather than de novo.  Again, Defendant cannot show prejudice because, despite any error made by counsel in suggesting the applicable standard of review, the Eleventh Circuit applied the appropriate standards of "de novo" and "abuse of discretion" to Defendant's claims. (*See* Doc. 459 at 11, 12.) Consequently, Defendant is not entitled to relief on this ground.

### *Ground Twelve*

Defendant asserts that appellate counsel was constitutionally ineffective when he made only generalized allegations in support of his claim that the Government improperly failed to file a 5K1 motion instead of raising a potentially meritorious claim.

Specifically, Defendant asserts that counsel should have argued that the Government did not file a 5K1 motion as a result of prosecutorial vindictiveness in light of Betty Hilgendorf's refusal to forfeit the Ranch property.

The decision to file a 5K1 motion, particularly in a case where there is no plea agreement, is a matter of prosecutorial discretion.  United States v. Nealy, 232 F.3d 825, 831 (11th Cir. 2000); United States v. Orozco, 160 F.3d 1309, 1315 (11th Cir. 1998); United States v. Forney, 9 F.3d 1492, 1501 (11th Cir. 1993).  Otherwise stated, the government has a power, not a duty, to file such a motion when a defendant has substantially assisted.  Wade v. United States, 504 U.S. 181, 185 (1992) (analyzing substantial assistance motions under § 5K1.1 and 18 U.S.C. § 3553(e)); United States v. Dorsey, 554 F.3d 958, 960–61 (11th Cir. 2009) (quoting Forney, 9 F.3d at 1500);  see also United States v. McNeese, 547 F.3d 1307, 1309 (11th Cir. 2008) (applying Wade to Rule 35(b) motions).  Judicial review of a decision not to file a 5K1 motion is appropriate only where there is an allegation and substantial showing that the prosecution refused to file a substantial assistance motion because of a constitutionally impermissible motivation, such as race or religion.  Wade, 504 U.S. at 185–86; Dorsey, 554 F.3d at 961; Nealy, 232 F.3d at 831.  A defendant who merely claims to have provided substantial assistance or who makes only generalized allegations of an improper motive is not entitled to a remedy or even to an evidentiary hearing.  Wade, 504 U.S. at 186.  Judicial review is appropriate only "when there is an allegation and a substantial showing that the prosecution refused to file a substantial assistance motion because of a constitutionally impermissible motivation."  Dorsey, 554 F.3d at 961

(quoting Forney, 9 F.3d at 1502).  Defendant's allegations of governmental misconduct are conclusory, and she has not suggested the existence of an unconstitutional motivation such as those identified in Wade.  Therefore, she has not shown that counsel was constitutionally ineffective for his failure to raise this claim on appeal.

### Ground Thirteen

Defendant maintains in her next ground for relief that counsel was constitutionally ineffective when he failed to appeal specific issues that Defendant told him she wanted to appeal.

Due process of law requires that a defendant receive effective assistance of appellate counsel on direct appeal.  Evitts v. Lucey, 469 U.S. 387, 396 (1985).  However, the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to do so.  Smith v. Robbins, 528 U.S. 259, 287–88 (2000); Knowles v. Mirzayance, 556 U.S. 111, 126–127 (2009); Jones v. Barnes, 463 U.S. 745, 751–52 (1983); Heath v. Jones, 941 F.2d 1126, 1130–31 (11th Cir. 1991).   It is possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate in such a situation that counsel's performance was constitutionally ineffective.  Smith, 528 U.S. at 288 (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")); see also Payne v. United States, 566 F.3d 1276, 1277 (11th Cir. 2009) (citing Smith).  "Experienced advocates since time beyond memory have emphasized the importance of winnowing

out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  Barnes, 463 U.S. at 751–52.  In fact, this is the "hallmark of effective appellate advocacy."  Smith v. Murray, 477 U.S. 527, 536 (1986).  The mere fact that one of the non-appealed issues might have been successful does not preclude a finding that the counsel's performance, which must be judged in its entirety, was effective.  *Id*.; Heath, 941 F.2d at 1131 (counsel's appellate advocacy must be judged in its entirety); Reutter v. Secretary for Dept. of Corrections, 232 F. App'x 914, 917 (11th Cir. 2007) (citing Heath).

Defendant identifies three issues that she told counsel to appeal: (1) the breached verbal plea agreement at the plea revocation; (2) prosecutorial misconduct/vindictiveness related to her reluctance to have her mother forfeit property; and (3) Battered Woman's Syndrome as addressed in Dr. Krop's report.  She claims that had counsel raised these issues on appeal, the results of the appellate proceeding would have been different.

There was no viable basis for an appeal of any of these issues.  As discussed more fully above, there is no record evidence supporting the existence of the alleged "verbal plea agreement," and in fact Defendant herself notes the possibility that the alleged agreement was "invented" by attorney Johnson in order to protect his own interests and form a more positive relationship with the AUSA. (Doc. 490 at 26.)

Second, only Defendant's speculation provides support for her claim of prosecutorial vindictiveness.  AUSA Williams told Defendant's mother that he wanted to

file for a sentence reduction for Defendant, but it was his superiors who would not allow him to do this, for unspecified reasons. (Doc. 490-9 at 4.)

Finally, with respect to the third issue, Battered Woman's Syndrome was not specifically mentioned  in Dr. Krop's report, so there would not have been a basis to appeal on that specific ground.  Defendant has not shown that she is entitled to relief on this claim.

### Ground Fourteen

Defendant next claims that appellate counsel was constitutionally ineffective for his failure to raise on appeal the fact that she did not enter her plea and cooperation agreement knowingly, intelligently, and voluntarily. She adopts by reference the arguments made in Ground One and offers nothing else in support of this claim. Appellate counsel is not ineffective for failing to raise claims that are reasonably considered to be without merit.  Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013);  United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)).   Defendant has not shown prejudice.

### Ground Fifteen

Defendant asserts that appellate counsel was constitutionally ineffective for failing to appeal the conflict of interest issue that precluded attorney Johnson from proceeding to trial, and adopts the arguments previously raised in Ground One.  As discussed *supra*, Defendant failed to establish the existence of a conflict of interest that affected counsel's representation of her, and appellate counsel is not constitutionally

ineffective for failing to raise a meritless claim.  Brown, 720 F.3d at 1335;  Nyhuis, 211

F.3d at 1344; Alvord, 725 F.2d at 1291.

### Ground Sixteen

Defendant next contends that counsel was constitutionally ineffective for filing to

appeal the fact that she was entitled to a sentence reduction because she had "fully

and faithfully performed the duties specified in her plea and cooperation agreement."

After the plea and cooperation was revoked, there was no agreement between the

Government and Defendant.  Thus, there was no basis for counsel to assert that the

Government had failed to perform its side of the bargain, as no "bargain" remained.

Counsel was not constitutionally ineffective for his failure to raise a claim with no basis

in fact or law.   Brown, 720 F.3d at 1335;  Nyhuis, 211 F.3d at 1344; Alvord, 725 F.2d

at 1291.

### Ground Seventeen

Defendant asserts that counsel's failure to appeal the issue of quantum meruit

was constitutionally ineffective.  Defendant has not shown that this was a viable claim,

and appellate counsel is not constitutionally ineffective for failing to raise a meritless

claim. Brown, 720 F.3d at 1335;  Nyhuis, 211 F.3d at 1344; Alvord, 725 F.2d at 1291.

### Ground Eighteen

Defendant maintains that counsel should have appealed the fact that she had

viable defenses to the firearms charge and to the fact that multiple firearms were seized

at the Ranch property.  Even though counsel raised this issue at sentencing, there was

no legal basis for counsel to pursue this claim after Defendant's guilty plea, and her

attorney was not constitutionally ineffective for his failure to do so. Brown, 720 F.3d at 1335; Nyhuis, 211 F.3d at 1344; Alvord, 725 F.2d at 1291.

### Ground Nineteen

Defendant contends that counsel was constitutionally ineffective for his failure to appeal her sentence based upon available § 5K2.13 information or any other mitigating information.  This issue was not properly presented and preserved for appeal, as discussed with respect to Grounds Nine and Thirteen above.  Therefore, the trial court had no opportunity to consider such arguments in the first instance.  Counsel was not constitutionally ineffective for his failure to appeal an issue that had not previously been presented. Brown, 720 F.3d at 1335; Nyhuis, 211 F.3d at 1344; Alvord, 725 F.2d at 1291.

### Ground Twenty

Defendant's last claim for relief is that counsel should have appealed her sentence as unreasonable.  She asserts that her sentence was unreasonable for several reasons.  First, she claims that there was unwarranted sentencing disparity between her sentence and that of co-defendants and co-conspirators, in that she was the least culpable of the four individuals, yet her sentence was on par with the sentence received by co-defendant Adams, who did not cooperate but went to trial.

On the record before the court, the alleged sentencing disparity would not have been a viable ground for appeal.  Defendant's sentence was the product of guidelines calculations reflecting the particular facts and circumstances of her case.  Defendant now maintains that the sentencing court does not enjoy the benefit of a legal

presumption that the guidelines sentence should apply, and appears to suggest that the court viewed the Sentencing Guidelines as mandatory.  United States v. Hill, 643 F.3d 807, 880 (11th Cir. 2011) (quoting Rita v. United States, 551 U.S. 338, 351 (2007)). The court in this case imposed a sentence that was in the middle point of the applicable guidelines range.  Although its remarks were relatively brief, there is nothing in the record to suggest that the court viewed the Sentencing Guidelines to be mandatory.  In fact, because the court imposed a mid-guidelines range sentence tends to suggest the opposite.  If the court had sentenced Defendant at the upper or lower end of the applicable range, Defendant's argument that the court felt "constrained" by the range would have had greater weight.  Instead, it appears that the court sentenced Defendant as it believed was reasonable and appropriate after considering all the circumstances of the case, and the sentence happened to fall within the mid-point of the applicable range.

## CONCLUSION

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in her motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.  Nor has she shown that an evidentiary hearing is warranted.  Therefore Defendant's motion should be denied in its entirety.

## Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a

certificate is issued "the court must state the specific issue or issues that satisfy the).howing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The second amended motion to vacate, set aside, or correct sentence (Doc. 490) should be **DENIED** as to all claims.

2.  A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 6th  day of August, 2014.


*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).